IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,  )<br>                                                      )<br>          Plaintiff,                     )<br>                                                      )<br>     v.                                          )<br>                                                      )<br>GARY PURRINGTON, an Individual;  )<br>DIANE PURRINGTON, an Individual; )<br>G. SKYLER PURRINGTON, an         )<br>Individual; and FIREFOX ENTERPRISES, )<br>INC., a Corporation,                  )<br>                                                      )<br>          Defendants.                 )<br>_____)  | Case No. CV-04-577-E-BLW<br><br>**MEMORANDUM<br>DECISION AND ORDER** |

## INTRODUCTION

The Court has before it Plaintiff's Motion for Summary Judgment (Docket No. 80), Defendants' Motion for Summary Judgment (Docket No. 81) and Plaintiff's Motion to Strike (Docket No. 90). The Court heard oral argument on the motions on November 8, 2006, and now issues the following decision.

## ANALYSIS

**I.     Federal Hazardous Substances Act**

The FHSA prohibits "[t]he introduction or delivery for introduction into interstate commerce of any misbranded hazardous substance or banned hazardous

Memorandum Decision and Order -- Page 1

substance." 15. U.S.C. § 1263(a).  Fireworks intended to produce audible effects, including "kits and components intended to produce such fireworks" are considered banned hazardous substances if the audible effect of the firecracker is produced by a charge of more than 50 milligrams of a pyrotechnic composition such as flash powder.  See 16 U.S.C. § 1500.17(a)(8).

The government contends that Defendants violate the FHSA by shipping components intended to produce banned fireworks.  In support of their motion for summary judgment, the government produced Defendants' invoices for sales between November 1999 and May 2005, which documented sales to 109 different customers whose order histories showed purchases of fine aluminum powder, potassium perchlorate, tubes, end caps, fuses, and little else.  (See Plaintiff's Statement of Undisputed Facts, Ex. C at 119-120, 122 and Ex. F at p. 7).[1] Defendant Gary Purrington admitted that at least some of these order histories showed that Defendants had shipped customers everything necessary to build banned fireworks, including M-80s.  (See Plaintiff's Statement of Undisputed Facts, Ex. B at p. 219, 223-26, 228-31, Ex. F at p. 7, Ex. K at 12-13, Ex. M at 6-7,

---

[1] For ease of reference to the record, the Court will reference Plaintiff's Statement of Undisputed Facts throughout this Memorandum Decision.  However, to be clear, it is the exhibits attached to the Statement of Undisputed Facts, which make up the pleadings, depositions, answers to interrogatories, admissions and affidavits, that the Court is relying on as evidence in this matter.

**Memorandum Decision and Order -- Page 2**

11-16, 17-19, 21-27, and Ex. O at 1-3, 5-6, 14-15, 25-26, 119-120, 122).

The government also produced expert testimony that the items ordered by the customers evidenced an intent to build M-80s or similar devices. (See Plaintiff's Statement of Undisputed Facts, Ex. F at 7-9, Ex. G at 22, 25, 38-41, and Ex. H at 2, 5.1). The order histories reviewed by the experts included those belonging to Defendants' customers Joseph Peterson, Raymond Berger, and Edwin Allen. (See Plaintiff's Statement of Undisputed Facts, Ex. B at 16, Ex. K at 12-13, 219, 228-231, Ex. L at 7-8, 11, Ex. M at 11-19, 21-26, and Ex. O at 1-3, 5-6, 8-15, 16-24, 25-26).

Defendants make no attempt to dispute the facts upon which the government relies in support of its argument that Defendants violated the FHSA. Instead, Defendants make wholly legal arguments that such actions do not constitute violations of the FHSA. Thus, the question of whether Defendants violated the FHSA is amenable to summary adjudication in favor of one of the parties because there are no genuine issues of material fact. See F.R.C.P. 56(c).

**A.    The Commission has jurisdiction under the FHSA**.

Defendants maintain the argument first asserted in their Motion to Dismiss that the Consumer Product Safety Commission (the "Commission") can only regulate consumer products. This Court already rejected that argument when it

denied the Motion to Dismiss (Docket No. 33). Nothing in the law has changed between the time of that earlier decision and now. As stated in this Court's earlier opinion, although the Consumer Product Safety Act ("CPSA") originally established the Commission to protect against injury associated with consumer products, its duties were specifically broadened by the provisions of 29 U.S.C. § 2079 transferring "[t]he functions of the Secretary of Health, Education, and Welfare under the Federal Hazardous Substances Act . . . to the Commission." 29 U.S.C. § 2079. It is clear that Congress transferred to the Commission the authority, under the FHSA, to regulate banned hazardous substances regardless of whether they are consumer products. Accordingly, Defendants' argument that the Commission can only regulate consumer products is without merit.

    **B.**     **ATFE jurisdiction does not preempt the Commission's jurisdiction.**

Defendants also claim that ATFE regulations preempt the Commission's jurisdiction. It is true that ATFE regulations reference devices also subject to Commission-administered fireworks regulations. ATFE regulations specifically define two categories of fireworks: (1) smaller consumer fireworks that contain pyrotechnic composition of 50 mg or less in the case of ground devices and 130 mg or less in the case of aerial devices; and (2) larger display fireworks that contain more than 130 mg of pyrotechnic composition. See 27 C.F.R. § 555.11.

**Memorandum Decision and Order -- Page 4**

Under ATFE regulations, persons who import, manufacture, or deal in explosives must obtain the appropriate ATFE license or permit. See 18 U.S.C. §§ 842(a)(1); see also 27 C.F.R. § 555.41. The FHSA also regulates the sale of hazardous substances by making it illegal to sale substances which contain more than 50 mg of pyrotechnic composition for ground devices or 130 mg of composition for aerial devices, as well as the kits and components intended to produce such devices. See 16 C.F.R. § 1500.17(a)(3) & 16 C.F.R. § 1500.17(a)(8).

Such overlap in FHSA and ATFE regulations means that a person's conduct could violate both regulations. Defendants therefore suggest that the ATFE limits the Commission's jurisdiction to consumer fireworks. Defendants essentially argue that the overlap causes ATFE regulations to preempt the Commission's jurisdiction over display fireworks. Defendants suggest that the overlap somehow caused the ATFE to repeal certain provisions of the FHSA.

The Supreme Court has stated that "'repeals by implication are not favored.'" Watt v. Alaska, 451 U.S. 259, 267 (1981) (quoting Morton v. Mancari, 417 U.S. 535, 549 (1974)). Therefore, "[t]he intention of the legislature to repeal must be 'clear and manifest'" before a statute is read out of existence. Id. (quoting United States v. Borden Co., 308 U.S. 188, 198 (1939)). The Court "must read the statutes to give effect to each if [it] can do so while preserving their sense

**Memorandum Decision and Order -- Page 5**

and purpose." *Id.* (citing *Morton*, 417 U.S. at 551). In line with this reasoning, the Ninth Circuit has stated that the courts have an "obligation to so construe federal statutes so that they are consistent with each other, as by this means congressional intent can be given its fullest expression." *Chevron U.S.A., Inc. v. Hammond*, 726 F.2d 483, 490 at n.8 (9th Cir. 1984). "'[W]hen two statutes are capable of co-existence, it is the duty of the courts . . . to regard each as effective.'" *Id.* at 155 (quoting *Morton*, 417 U.S. at 551).

     Here, the ATFE and FHSA can be construed consistently with each other and co-exist, at least with respect to the claims made in this case. The FHSA deals with items potentially found in homes, and grants the Commission authority to define, within certain parameters, what constitutes banned hazardous substances. See 15 U.S.C. § 1261(f)(1). The ATFE more broadly restricts the importation, manufacture, and sale of explosive materials. See 18 U.S.C. §§ 842; see also 27 C.F.R., Ch. II, Subch. C, Pt. 555. However, neither statute specifically permits actions which the other statute prohibits. Accordingly, there is no reason or authority for finding that ATFE regulations directly or implicitly overrule FHSA regulations. Thus, Defendants argument that the ATFE preempts FHSA jurisdiction over the government's claims is without merit. Accordingly, the Court will grant summary judgment in favor of the government on the FHSA claim.

**Memorandum Decision and Order -- Page 6**

## II.     Hazardous Materials Regulations

The Hazardous Materials Regulations ("HMR") set forth rules for transportation of hazardous materials ("hazmat") in interstate and intrastate commerce.  See 49 C.F.R. §§ 171–180.  Hazmat may be shipped as Other Regulated Material ("ORM"), a category excepted from certain HMR, if an exception is listed as available for the particular chemical in column 8 of the hazmat table located at 49 C.F.R. § 172.101.  See 49 C.F.R. § 173.144.  The government alleges that Defendants violate the HMR.

### A.     The government has submitted evidence that Defendants violate the HMR by failing to provide the required declarations and labeling.

The government has put forth evidence that Defendants ship chemicals and other items considered hazmat that are regulated pursuant to the HMR.  (See Plaintiff's Statement of Undisputed Facts, Ex. P at 45; see also 49 C.F.R. § 172.101 (table listing regulated materials)).  The government has also shown that Defendants classify, for purposes of shipping, many of their chemicals as ORM.  For example, Defendants routinely ship types of magnesium powder, with chips, in non-hazmat containers as ORM.  (See Plaintiff's Statement of Undisputed Facts, Ex. P at 64-65, 76-77).  However, Defendants do not declare the materials in shipping papers, do not place them in a hazmat packaging, do not provide a United

**Memorandum Decision and Order -- Page 7**

Nations ("UN") approved number or proper shipping name on the outside of the package, and do not attach any warning labels on the outside of the packages when they ship materials as ORM. (See Plaintiff's Statement of Undisputed Facts, Ex. P at 65-66, 75-78, 88-89).

Defendants also sell zinc dust. (See Plaintiff's Statement of Undisputed Facts, Ex. P at 78). On at least two occasions in March 2005, Defendants shipped zinc dust as an ORM consumer commodity. (See Plaintiff's Statement of Undisputed Facts, Ex. P at 78-80). As with the magnesium shipments, Defendants did not declare the zinc dust in their shipping papers, did not place the zinc dust in a hazmat box, did not provide a UN approved number or proper shipping name on the outside of the package, and did not attach any diamond-shaped warning labels on the outside of the package. (See Plaintiff's Statement of Undisputed Facts, Ex. P at 78-80). Defendants customarily ships zinc dust in this manner. (See Plaintiff's Statement of Undisputed Facts, Ex. P at 78-80, 176-77).

The government has also submitted evidence that on or about January 25, 2005, Defendants shipped fine aluminum powder as an ORM consumer commodity. (See Plaintiff's Statement of Undisputed Facts, Ex. P at 86-89). Defendants did not declare the aluminum powder in their shipping papers and did not provide the UN approved number on the outside of the package. (See

**Memorandum Decision and Order -- Page 8**

Plaintiff's Statement of Undisputed Facts, Ex. P at 86-89).  Defendants customarily ship fine aluminum powder in this manner.  (See Plaintiff's Statement of Undisputed Facts, Ex. P at 88-89, 147).

Finally, the government has put forth evidence that although many of the chemicals which Defendants sell can be classified as consumer commodities under the HMR, Defendants admit that the chemicals they sell are not for personal care.  (See Plaintiff's Statement of Undisputed Facts, Ex. P at 95-96).  Defendants also admit that they have no knowledge that their customers are using the products inside their homes.  (See Plaintiff's Statement of Undisputed Facts, Ex. P at 95-96).

> **B.**     **The government has also set forth evidence that Defendants violate the HMR shipping guidelines.**

The government also alleges that Defendants ship potentially unstable combinations of chemicals in single boxes in violation of the HMR.  The government references two provisions in the HMR which prohibit the shipment within the same outer box of chemicals that, if combined, make an unstable mixture.  Section 173.21(e) generally prohibits transportation of "[a] material in the same outer packaging, freight container, or overpack with another material, the mixing of which is likely to cause a dangerous evolution of heat, or flammable or poisonous gaseous or vapors, or to produce corrosive materials." 49 C.F.R. §

**Memorandum Decision and Order -- Page 9**

173.21(e). Section 173.24(e)(4)(III) states that hazmat "may not be packed or mixed together in the same outer packaging with other hazardous or nonhazardous materials if such materials are capable of reacting dangerously with each other and causing . . . formation of unstable or corrosive materials." 49 C.F.R. § 173.24(e)(4)(III).

The evidence before the Court shows that Defendants ship components for flash powder in individual containers within the same outer packaging. (See Plaintiff's Statement of Undisputed Facts, Ex. P at 86-87, 140-41). Defendants also ship the components for gunpowder in the same packaging. (See Plaintiff's Statement of Undisputed Facts, Ex. P at 153-54). Defendants also ship fuse and the components for flash powder or gunpowder in the same packaging, and ship fuse and fine metal powders within the same outer packaging. (See Plaintiff's Statement of Undisputed Facts, Ex. P at 148-51).

### C. The government has submitted evidence that Defendants violate the HMR in several other general ways.

The government sets forth a list of several other HMR violations on the part of Defendants. First, Defendants admit that they do not retain copies of shipping papers as required by 49 C.F.R. § 172.201(e). (See Plaintiff's Statement of Undisputed Facts, Ex. P at 119-120).

Second, Defendants admit that they sell fuses of at least five different

**Memorandum Decision and Order -- Page 10**

diameters, and with otherwise different designs, but that they mark packages with only three different EX numbers. (See Plaintiff's Statement of Undisputed Facts, Ex. P at 102-111, 169-172). However, the HMR requires that shipments of fuses of different diameters be assigned unique EX numbers. See 49 C.F.R. § 173.56(a) & (b).

Third, Defendants admit that they manufacture and sell their own thermite mixture, which they classify as a flammable solid. However, Defendants conducted no self-reactivity testing prior to sale and shipment of the material. (See Plaintiff's Statement of Undisputed Facts, Ex. P at 166-169, Ex. Q at 1-4). The HMR requires that a self-reactivity test be conducted and that if the test results indicate that this mixture is self-reactive, then the mixture must undergo further testing and classification, and be specifically approved in writing by Department of Transportation before its shipment. See 49 C.F.R. § 171.2(e), 49 C.F.R. § 173.22(a)(1) and 49 C.F.R. § 173.124(a)(2).

Fourth, Defendants admit that with respect to at least some shipments of multiple hazmat items, including fuse and sticky match, Defendants identify in the shipping papers and on the package only the material that he deems the most hazardous. (See Plaintiff's Statement of Undisputed Facts, Ex. P at 127-140). However, the regulations require that when multiple hazardous materials are

**Memorandum Decision and Order -- Page 11**

shipped together, every hazardous material must be disclosed in the shipping papers that accompany the materials during transportation, and the packaging must bear the proper marking and labeling for every hazardous material shipped.  See [49 C.F.R. § 172.201](#).

### D. Defendants have failed to submit evidence creating a genuine issue of material fact with respect to their violations of the HMR.

Although at pages 9-10 of their Response to Plaintiff's Motion for Summary Judgment, Defendants offer a set of material facts in dispute, a review of those disputed facts reveals that they are not all that different from the facts set forth by the government and as outlined above.  This makes some sense because the vast majority of the evidence presented by both sides comes from the affidavit and deposition testimony of Gary Purrington.  The only relevant facts offered by Defendants that are not already outlined above consist of additional statements made by Gary Purrington with respect to whether certain chemicals could form unstable substances during transit. Defendants then make the general argument that most of the hazmat they ship are Class 4 materials, which can be shipped in limited quantity and excepted from the labeling and packaging requirements of the HMR. Defendants also generally argue that hazmat can be excepted from shipping paper requirements if the hazmat can be classified as a consumer commodity and reclassified as ORM.  Defendants further contend that they contacted DOT

**Memorandum Decision and Order -- Page 12**

representatives who confirmed the manner in which they should package and ship hazmat.  Defendants state that they ship in small quantities, with the hazmat always being in 2 lbs. containers or smaller and that the gross weight of a package never exceeding 66 lbs.  By doing this, Defendants contend that they are in full compliance with the HMR.

Defendants' general statements do not create a genuine issue of material fact with respect to the numerous HMR violations alleged by the government.  First, Defendants general assertion that hazmat can be excepted from the HMR if it is packaged and shipped as a consumer commodity by reclassifying it as ORM is simply a statement of the law.  However, Defendants do not address the specific allegations where exceptions do not apply to their shipments.  For example, Defendants do not address the instances where Defendants shipped powdered magnesium, which does not qualify for the ORM exception based on the table of regulated material.  The table specifically states "none" under Column 8 exceptions for powdered magnesium.  (See 49 C.F.R. § 172.101 (table listing regulated material)).

Second, Defendants' contention that they do not know whether they customarily retain copies of mandatory papers that accompany shipments of hazmat, as required by the HMR, 49 C.F.R. § 172.201(e), does not create a genuine

**Memorandum Decision and Order -- Page 13**

issue of material fact. Gary Purrington definitively stated that whatever papers Firefox retained would have been provided to the government in response to discovery requests. (See Plaintiff's Statement of Undisputed Facts, Ex. P at 119). However, the government states that none were produced, and Court finds none in the record.

Third, Defendants' assertion that DOT employees confirmed their shipping practices does not establish that Defendants did not violate the HMR. As noted by the government, in this case, the government seeks merely to enjoin future illegal conduct, not to punish Defendants for prior acts or to take back some benefit previously granted. Defendants cannot claim detrimental reliance where the only detriment would be to operate within existing legal boundaries. Furthermore, even assuming the DOT representatives confirmed Defendants' shipping practices, Defendants have not argued that changing their practices to conform with proper HRM guidelines in the future will harm them. Accordingly, based on this Court's finding that Defendants do violate HRM regulations, the Court can enter an injunction preventing them from doing so in the future. *See Orantes-Hernandez v. Thornburgh, 91 F.2d 549, 564 (9th Cir. 1990)* (permanent injunctive relief is warranted where . . . defendant's past and present misconduct indicates a strong likelihood of future violations).

**Memorandum Decision and Order -- Page 14**

Finally, Defendants do not specifically deny that they ship potentially unstable combinations of chemicals in single boxes in violation of the HMR. Instead, they suggest that such materials do not "cause a dangerous evolution of heat, or flammable or poisonous gaseous or vapors, or produce corrosive materials" as prohibited by 49 C.F.R. § 173.21(e), and they are not "capable of reacting dangerously with each other and causing . . . formation of unstable or corrosive materials" as prohibited by 49 C.F.R. § 173.24(e)(4)(III).  However, Defendants arguments are based solely on Gary Purrington's beliefs, without any indication of how or why he is competent to testify to such mattes.  Without more, Gary Purrington's testimony is not permissible under Federal Rule of Civil Procedure 56(e).

In sum, the government's allegations are sufficiently supported by the evidence to show that Defendants violate the HMR, and Defendants have not come forth with sufficient pleadings, depositions, answers to interrogatories, admissions or affidavits to create a genuine issue of material fact as to their numerous violations of the HMR.  Accordingly, the Court will find that Defendants violate the HMR as outlined above.

### III. Motion to Strike

The government moves to strike Defendant's Reply Memorandum to the

**Memorandum Decision and Order -- Page 15**

Government's Motion for Summary Judgment or.  In its motion to strike, the government also responded to the substance of Defendant's reply brief.  The government is right that Defendants are not entitled to a reply brief in opposition to the government's Motion for Summary Judgment.  However, instead of striking Defendant's brief, the Court will consider the arguments contained in the government's motion to strike as a sur-reply.  The Court will therefore deny the motion to strike.

## IV.   Remedy

"A district court has "'broad latitude in fashioning equitable relief when necessary to remedy an established wrong.'" *High Sierra Hikers Assoc. V. Blackwell*, 390 F.3d 630, 641 (quoting *Natural Res. Def. Council v. Southwest Marine, Inc.*, 236 F.3d 985, 999 (9th Cir.2000)).  "In issuing an injunction, the court must balance the equities between the parties and give due regard to the public interest." *Id.*

Although the evidence before the Court is sufficient to grant summary judgment in favor of the government, the Court is not in a position to fashion the injunctive relief sought by the government at this time.  Before the Court issues an injunction, which may severely impact Defendants' business, the Court would need to hear evidence regarding the injunctive relief sought by the government,  how the

**Memorandum Decision and Order -- Page 16**

relief is tied to Defendants' violations of the FHSA and HMR, the public's interest in fashioning a remedy and the how the proposed remedy balances the equities of the parties.

However, it has been this Court's experience in cases like this one that a negotiated settlement by the parties is better than a court-imposed remedy because the parties have a much broader array of alternatives than the Court.  To that end, the Court will encourage the parties to reach a remedy in this matter based on the findings in this Memorandum Decision and Order.  If the parties are unable to do so, they shall contact the Court and the Court will schedule a hearing to assist the Court in fashioning a remedy.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED that Plaintiff's Motion for Summary Judgment (Docket No. 80) shall be, and the same is hereby, GRANTED.

IT IS FURTHER ORDERED that Defendants' Motion for Summary Judgment (Docket No. 81) shall be, and the same is hereby, DENIED.

IT IS FURTHER ORDERED that Plaintiff's Motion to Strike (Docket No. 90) shall be, and the same is hereby, DENIED.

IT IS FURTHER ORDERED that the parties shall have until January 15, 2007 to negotiate an agreed upon remedy in this matter.  If the parties cannot reach

an agreement, the parties shall contact Jeff Severson at (208) 334-9027, the law clerk assigned to this case, to set up a process to assist the Court in fashioning a remedy.

DATED: **December 6, 2006**

Honorable B. Lynn Winmill
Chief U. S. District Judge

**Memorandum Decision and Order -- Page 18**